40 P.3d 877

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Richard Louis ADAM, Defendant,**

and

**Michael G.M. Ostendorp, Real Party In Interest–Appellant.**

No. 23030.

Supreme Court of Hawai'i.

Feb. 8, 2002.

476

Michael G.M. Ostendorp, real party in interest-appellant, on the briefs, appearing pro se.

Diane Erickson and Patricia Ohara, Deputy Attorneys General, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by MOON, C.J.

Real party in interest-appellant Michael G.M. Ostendorp appeals from the order of the circuit court of the third circuit, the Honorable Ronald Ibarra presiding, ordering Ostendorp to pay, *inter alia*, jury fees and costs in the amount of $2,460.27 for failing to appear at a jury trial. Ostendorp claims that the circuit court: (1) violated his right to due process by sanctioning him without adequate notice or an opportunity to be heard in a timely manner; (2) abused its discretion in sanctioning him under the Rules of the Circuit Courts of the State of Hawai‘i (RCCH) Rule 15(b) (1999) (providing that a court may sanction an attorney for failing to appear without just cause) (quoted in full *infra*); and (3) abused its discretion in sanctioning him pursuant to its inherent authority. Because Ostendorp's claims lack merit, we affirm the circuit court's order.

## I. BACKRGOUND [1]

Ostendorp represented Defendant Richard Lewis Adam, who was charged with: assault, terroristic threatening, reckless endangerment, and promoting a detrimental drug. Ostendorp became counsel of record on October 19, 1998, after Adam's second attorney,[2] William I. Zimmerman, withdrew because he was engaged in a law practice with the deputy prosecutor's husband.

---

1. Because this appeal deals solely with the circuit court's order of sanctions against Ostendorp, details of Adam's substantive appeal, which was assigned to the Intermediate Court od Appeals (ICA), are not relevant and are not discussed herein. On November 26, 2001, the ICA filed a published opinion affirming Adam's conviction and sentence. *See State v. Adam*, 97 Hawaiì 413, 38 P.3d 581, (Haw.Ct.App. 2001).

2. Adam's initial attorney, Robert D.S. Kim, withdrew as counsel on September 2, 1998. According to Kim, Adam felt there was a conflict of interest because Kim had represented an individual who was defending against an application for a TRO brought by Adam one to two years earlier.

On April 14, 1999, Ostendorp filed a Motion to Continue Trial Week, which was heard on April 19, 1999. In granting the defense's motion to continue, the circuit court and counsel had the following exchange:

THE COURT: September 7th?

DEPUTY PROSECUTOR: That's fine, Your Honor.

THE COURT: Mr. Ostendorp?

OSTENDORP: Your Honor, if I may look—September 7th. The week of the [sic] September 6th, I'm supposed to be starting something in Federal Court, although we've been bounced three times, a civil case. *September 7th is fine*, Your Honor.

(Emphasis added.)

On July 31, 1999, United States Magistrate Judge Barry Kurren (Magistrate Kurren) informed Ostendorp that his civil trial in federal court would commence on August 31, 1999. According to Ostendorp, Magistrate Kurren made it clear that the trial would not be continued except for a "very good reason". Ostendorp said he believed the federal trial would last two to three weeks. Ostendorp stated, however, that Magistrate Kurren believed the trial would only take two to three days.

On August 3, 1999, Ostendorp filed another Motion to Continue Trial Week, which was heard on August 9, 1999. Ostendorp informed the circuit court that he did not tell the federal court of his scheduling conflict when it advanced the federal trial date. When the circuit court inquired as to why Ostendorp did not request that the federal court reschedule, Ostendorp responded, "Honestly, Judge, because I'm more afraid of Judge Ezra than you. I'm sorry. It's the naked truth. I'm—especially after we got him turned over on [sic] Ninth Circuit, so I—yeah, I'm just more afraid of him." The circuit court denied Ostendorp's motion, stating:

And the only reason I am not continuing the case at this point, without even heard

[sic] the prosecutor's opposition, is this case was set. You went into Federal Court knowing that this case was set. You did not tell the Federal judge that you had a trial, and now you come back after the Federal Court set the trial which may conflict—I say "may," with this case.

After the circuit court issued its decision, Ostendorp did not attempt to clarify his recitation of the facts or move to reconsider the court's order.

On August 26, 1999, the circuit court filed orders denying Adam's Motion to Disqualify the State's Attorneys and his Motion to Dismiss for Failure to Provide Discovery. On August 31, 1999, Ostendorp filed a notice of appeal, appealing from the circuit court's denial of the two motions, arguing that the appeal was appropriate under the collateral order doctrine.

On September 2, 1999, Ostendorp telephoned the circuit court to determine whether trial would commence on September 7th as scheduled. The court arranged for a telephone conference with the parties the same day. During the telephone conference, Ostendorp expressed his belief that trial could not proceed because the circuit court lost jurisdiction over the case when Ostendorp filed the August 31, 1999 notice of appeal. The circuit court believed that the orders Adam was appealing from were not final judgments and did not fall within the collateral judgment rule. The circuit court, therefore, ordered, "Mr. Ostendorp, absent a Supreme Court writ of mandamus,[3] you are ordered to be here with your client on Tuesday [September 7, 1999], at 9 o'clock for a jury trial." During the telephone conference, Ostendorp did not inform the court of any scheduling conflict and did not tell the court that he would not be able to appear for trial on September 7, 1999.

On September 7, 1999, Ostendorp did not appear for Adam's jury trial. Adam appeared and was accompanied by attorney Peter E. Roberts.[4] Roberts informed the

---

3. Ostendorp filed a petition for a writ of mandamus on September 3, 1999 (No. 22789), which was withdrawn on September 8, 1999.

4. Although not entirely clear from the record, Roberts apparently had not been formally retained by Adam. However, according to Ostendorp's brief, he and Roberts, who are not mem-

court that Ostendorp was in Honolulu, and that, although his federal trial was ongoing, Ostendorp was not in trial that day.

The circuit court noted that the defense had failed to submit a witness list, an exhibit list, and proposed jury instructions as directed by the court. Roberts stated that he was unaware of the deadlines and that his appearance was the result of a telephone call from Ostendorp three days earlier. The court voiced concerns about a possible ineffective assistance of counsel allegation and inquired whether Roberts was prepared to proceed. After conferring with Adam, Roberts and the court had the following exchange:

> ROBERTS: Now, your Honor, as to proceeding today, I must make two representations to the Court. The first representation is that Mr. Adam, in fact, is extremely hesitant to proceed to trial with me covering for Mr. Ostendorp.
>
> The second representation is, however, that I have reviewed the police reports in this matter, the investigative reports in this matter. I believe that I have a clear understanding of the issues presented in the case. Hence, absent—Oh, and I have not discussed with Mr. Adam proposed testimony by himself. In other words, I haven't prepared him, I haven't gone over any questions with him. Absent that, I believe I'm aware of the facts of the case.
>
> THE COURT: Are you prepared to try this case?
>
> ROBERTS: I cannot represent that I believe I cannot do so, no. I believe I can.
>
> THE COURT: You can try this case?
>
> ROBERTS: (Nods head.)
>
> THE COURT: Are you Mr. Adam's attorney?
>
> ROBERTS: That's where the sticking point is.
>
> THE COURT: *Are you retained by Mr. Adam?*
>
> ROBERTS: *No, I'm not.* I, umm—
>
> THE COURT: Then why are you here?

> ROBERTS: Because Mr. Ostendorp asked me to be here as—because from Tuesday on, he's back in front of Judge Ezra.

(Emphasis added.) Roberts admitted that he was not the attorney of record for Adam.

Adam informed the circuit court that Ostendorp was his attorney and that he did not want Roberts to represent him at trial. The court found that Adam's trial could not proceed as scheduled. The court informed Roberts that it would refer him to the Office of Disciplinary Counsel (ODC) for giving the court the impression that he was authorized to represent Adam at trial and stated that it would sanction Ostendorp under RCCH Rule 15 and its inherent authority for failing to appear.

Roberts stated that he was informed that he had authority to represent Adam at trial, but opined that Adam may not have been aware of the extent of Roberts's representation. The circuit court questioned Adam regarding the scope of Roberts's authority, and Adam repeated that he had not given Roberts authority to represent him at trial.

Adam also had the following exchange with the court:

> [Adam]: I didn't find out until Thursday that I had to go to court. I was under the impression that this thing was going to go to the Supreme Court, and I wasn't going to court till the year 2001. By accident, I found out—
>
> THE COURT: 2001?
>
> [Adam]: Yes. And by accident, I happened to talk to Roy at ICS, Intake Services. He told me I had to go to trial. And I don't think they were aware that they had to go to trial either. In other words—
>
> THE COURT: "They," being who [sic]? Mr. Ostendorp, or Mr. Roberts, or Mr. Toomey? Who are you referring to, "they"?
>
> [Adam]: Yeah.
>
> THE COURT: Feel free. Feel free, Rich.

bers of the same law firm, had met with Adam on previous occasions and Roberts had been in-

volved in the preparation and pretrial motions and was, thus, familiar with the case.

[Adam]: They weren't aware that they were going to trial. In other words, it's kind of winging it at the last minute.

Adam further explained:

[T]he concern I have is, like you said, there's no witness list, there's no exhibit list. And I had specifically told Mr. Ostendorp what I wanted for a witness list and what I wanted for an exhibit list, and I don't have it, and I don't feel comfortable because of that. So if this thing goes any further, I cannot bring these witnesses at a later time. And that's my concern.

After Adam had articulated his concerns about the witness and exhibit lists, the circuit court questioned Roberts about the witnesses and exhibits the defense intended to use at trial. Roberts indicated that he and Ostendorp did not intend to call any witnesses other than those on the prosecution's witness list. Regarding exhibits, Roberts indicated that he intended to use, *inter alia,* two videotapes, an investigative report, an orthopedic report, photographs, and a tide calendar, none of which were previously disclosed to the prosecution. The prosecution stated that it would object to the introduction of the exhibits. When the court questioned Roberts as to the content of one of the videotapes he intended to introduce, Roberts indicated that he had not viewed the tape.

The circuit court again addressed Adam and asked if Roberts had the authority to represent him if his case were to go to trial as scheduled. Adam responded, "Providing that the prosecutor would allow us to amend the exhibit and the witness list." The deputy prosecutor repeated that she would object to the defense's exhibits based upon lack of notice. The court attempted to limit the number of exhibits and address the issue of the deputy prosecutor's review of them. After the prosecution argued that it still had not seen the photographs Roberts intended to introduce, Roberts reported to the court that he did not have the photographs with him.

While Roberts looked for the photographs he intended to introduce, the circuit court again addressed Adam:

THE COURT: Mr. Adam, while Mr. Roberts is looking at that, I want to make clear to you that this is your trial. So whatever the disposition of this trial, if you wish to go forward now, that's your choice alone.

And I want to say this: That whatever the disposition is, that you will not be able to come back to this Court, at least when I'm sitting and tell me that your lawyer was not prepared, and that he forced you to go forward with the trial, and that's why you went forward.

It's going to be your decision. You're not going to have two bites at the apple, so to speak, after you see the outcome of the trial.

Adam asked when the next trial date would be if he elected not to proceed that day, and the circuit court informed him that the earliest date would be February 22, 2000. Adam indicated that he wanted the later trial date. Thereafter, the court stated:

THE COURT: I'm going to continue this trial. I find that the defense is not prepared. I see the demeanor, the conversing between the defendant and the counsel. And I find that it's wasted the Court's time.

. . . .

THE COURT: We started here at 9 o'clock. It's now twenty minutes to 11. We have the jury been [sic] waiting.

I find that the defense has appeared here—first there was a question of authority, whether Mr. Roberts can represent Mr. Adam. Secondly, there's a question of the exhibit list, witness list. And even assuming that this Court was trying to pare down the defense list so that the prosecutor would not object on late notice so that the trial can go forward, this Court is not satisfied that there would not be a Rule 40 challenge to effective assistance of counsel, whatever the outcome may be in this case.

. . . .

Again, Mr. Ostendorp, having been told that the trial would go forward today at the hearing last Thursday—last Friday's hearing, has not appeared. There is a question of Mr. Roberts even being authorized to proceed on his own. There's a

question of whether Mr. Roberts was even prepared, not having any of the exhibits mentioned. The court finds that this resulted in a complete waste of the Court's time, the jurors' time, the prosecutor's time, and even Mr. Adam's time.

The court then ordered that Ostendorp pay all jury fees and costs, the prosecution's witness fees and costs, and any additional costs that the prosecution incurred. The court explained that it was sanctioning Ostendorp under RCCH Rule 15 and its inherent authority. For failing to comply with the deadline for providing a witness list, exhibit list, and jury instructions, the court sanctioned Ostendorp $100. The court also ordered Ostendorp to appear for a contempt hearing. However, at the close of the proceedings, the court stated:

> The Court will obtain the transcript of last Friday's proceeding to make clear that Mr. Ostendorp was told the trial would proceed today. Rule 15 and order to show cause why he should not be held in contempt of court. And the basis is—so that Mr. Ostendorp has advance notice, Mr. Roberts, the basis is Mr. Ostendorp not being present today resulted in this Court's continuing the jury trial which violated this Court's instructions to Mr. Ostendorp at the last hearing on Friday that the jury trial was to proceed today.

On September 16, 1999, the circuit court held an Order to Show Cause and Rule 15 hearing. Ostendorp was represented by Rory S. Toomey. Ostendorp stated that he had not received confirmation as to what he had done to warrant sanctions or an order to show cause, and he asked the court to continue the hearing.[5] After the court informed Ostendorp that he was being sanctioned for failing to appear at trial on September 7, 1999, Ostendorp asked to present argument opposing sanctions. The court allowed Ostendorp to present his argument, stating:

> [Y]ou may argue why, now, the Court, under its inherent authority, as well [as] its authority under the [sic] Rule 15 of the Circuit Court Rules should not impose

these sanctions against Mr. Ostendorp for not appearing which resulted in the jurors being excused ... without the jury trial going forward.

Ostendorp argued that sanctions were inappropriate because Roberts was able to proceed with the trial as scheduled. When questioned about the failure to provide witness and exhibit lists, Ostendorp responded that the defense planned to rely upon the prosecution's witnesses and exhibits. At Ostendorp's request, the hearing was continued to October 18, 1999. The court allowed the parties to submit memoranda in support of their positions.

On October 11, 1999, Ostendorp filed a Memorandum in Opposition to the Imposition of Sanctions. Ostendorp argued, *inter alia,* that the circuit court: (1) violated his right to due process; (2) was to blame for the continuance on September 7, 1999; (3) intimidated Adam into abandoning the defense strategy he had agreed upon with his attorney; and (4) was billing Ostendorp for expenses that it had not incurred. Notwithstanding Adam's statement to Judge Ibarra on September 7, 1999, Adam stated, in a signed declaration attached to Ostendorp's memorandum, that he "knew beforehand that Peter Roberts was going to be lead counsel in my trial and I had absolutely no objection to that."

On October 18, 1999, the hearing on RCCH Rule 15 sanctions resumed. The circuit court informed Ostendorp that it had not directed the prosecution to file a criminal contempt charge against him and that the court would proceed based only upon RCCH Rule 15 and its inherent authority. Ostendorp argued that his federal trial date preempted the state trial date and that Roberts was in fact retained by Adam to try the case. Ostendorp did not submit any evidence of a retainer agreement between Roberts and Adam, nor did he present any evidence that his federal trial date was scheduled before Adam's State trial date. Ostendorp also argued that the circuit court did not have the authority to summarily fine

---

5. The record does not indicate whether Ostendorp was in fact served with the order to show

cause.

or sanction him. Ostendorp's counsel, Toomey, concluded:

> The point is, Judge, as, again, this case should not have been—gotten this far out of hand, it should have—the Court should have simply, based upon the arguments in my memo, simply just walk away from it; accept Mr. Ostendorp's apologies for any misunderstanding, and we walk away. That's the way I see it.

The court stated that it would render its decision in writing.[6]

On November 30, 1999, the circuit court entered an Order Imposing Prospective Juror Fees and Costs Upon Motion for Failure to Appear at Jury Trial [hereinafter, sanction order]. Based upon RCCH Rule 15 and the court's inherent power, Ostendorp was ordered to pay $100.00 for failing to comply with the court's deadline for submitting trial documents and $2,460.27[7] for failing to appear at trial.

On December 8, 1999, Ostendorp filed a motion to stay execution of the sanction order, which was granted. The same day, Ostendorp filed a notice of appeal, appealing from the sanction order. Final judgment in Adam's trial was filed on April 27, 2000.

## II. STANDARDS OF REVIEW

### A. Jurisdiction

■ "The existence of jurisdiction is a question of law that we review *de novo* under the right/wrong standard." *Amantiad v. Odum*, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999) (quoting *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997)) (internal quotation marks omitted). Regarding appellate jurisdiction, this court has noted,

> [J]urisdiction is "the base requirement for any court resolving a dispute because without jurisdiction, the court has no authority

to consider the case." *Housing Finance & Dev. Corp. v. Castle*, 79 Hawai'i 64, 76, 898 P.2d 576, 588 (1995). With regard to appeals, "[t]he remedy by appeal is not a common law right and exists only by virtue of statutory or constitutional provision." *In re Sprinkle & Chow Liquor License*, 40 Haw. 485, 491 (1954). Therefore, "the right of appeal is limited as provided by the legislature and compliance with the methods and procedure prescribed by it is obligatory." *In re Tax Appeal of Lower Mapunapuna Tenants' Ass'n*, 73 Haw. 63, 69, 828 P.2d 263, 266 (1992).

*TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999).

### B. Due Process

■ "Hawai'i appellate courts review questions of constitutional law, *e.g.*, questions regarding procedural due process, *de novo*, under the right/wrong standard. Under the right/wrong standard, this court examines the facts and answers the question without being required to give any weight to the trial court's answer to it." *Bank of Hawai'i v. Kunimoto*, 91 Hawai'i 372, 387, 984 P.2d 1198, 1213 (1999) (citations, brackets, and quotation marks omitted).

### C. Sanctions

> [R]egardless whether sanctions are imposed pursuant to statute, circuit court rule, or the trial court's inherent powers, such awards are reviewed for an abuse of discretion. A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.

*Kunimoto*, 91 Hawai'i at 387, 984 P.2d at 1213 (citations, brackets, quotation marks, and ellipsis points omitted).

> THE COURT: Mr. Toomey, I'm not going to take that as threat to the Court.
> Toomey: It's not a threat, Judge, I'm just saying that we all have responsibilities.
> THE COURT: That's all.

---

**6.** Immediately before concluding the proceedings, the circuit court and Ostendorp's counsel had the following exchange:

> THE COURT: And I want to make clear whatever ruling this Court issues out of this hearing does not preclude referrals to investigation by the Office of Disciplinary Counsel.
> Toomey. It doesn't preclude investigation by the Commission on Judicial Conduct.

**7.** Although the prosecution filed a declaration of its witness fees and costs, the sanction order reflects only juror fees and costs for one-half day service.

## D. *Findings Of Fact*

■ A circuit court's findings of fact are reviewed under the "clearly erroneous" standard. *Stender v. Vincent*, 92 Hawai'i 355, 363, 992 P.2d 50, 58 (2000) (citing *In re Estate of Marcos*, 88 Hawai'i 148, 153, 963 P.2d 1124, 1129 (1998)).

## III. DISCUSSION

### A. *Jurisdiction*

■ When this appeal was filed, it presented the jurisdictional issue of whether a sanction order against an attorney in a criminal case is immediately appealable under the collateral order doctrine. However, as discussed *infra*, this court no longer needs to address the collateral order doctrine in the present case.

In criminal cases, appeals are governed by HRS § 641-11 (1993), which states in pertinent part,

Any party deeming oneself aggrieved by the judgment of a circuit court in a criminal matter, may appeal to the supreme court, subject to chapter 602 in the manner and within the time provided by the Hawai'i Rules of Appellate Procedure. The sentence of the court in a criminal case shall be the judgment.

Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b) (1999) sets the time for taking an appeal in criminal cases and provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

■ In the present case, Ostendorp filed his notice of appeal from the November 30, 1999 sanction order on December 8, 1999. Final judgment was filed on April 27, 2000. Although Ostendorp's notice of appeal was filed before entry of judgment, pursuant to HRAP Rule 4(b), his notice of appeal is deemed filed on April 27, 2000, the date final judgment was entered. As a general rule, an appeal from a final judgment in a case brings up for review all preceding interlocutory orders in the case. *State v. Hirano*, 8 Haw. App. 330, 332, 802 P.2d 482, 484 (1990) (citing *Kahalewai v. Rodrigues*, 4 Haw.App. 446,

667 P.2d 839 (1983)). Thus, Ostendorp's notice of appeal was timely filed, and this court has jurisdiction to entertain this appeal pursuant to HRS § 641-11 and HRAP Rule 4(b). Therefore, this court need not determine if the sanction order was immediately appealable under the collateral order doctrine.

### B. *Alleged Due Process Violation*

On appeal, Ostendorp argues that the circuit court violated his right to due process because he neither received notice of nor was provided an opportunity to prepare a meaningful defense to the sanction order. Regarding procedural due process, this court has stated:

Due process is not a fixed concept requiring a specific procedural course in every situation. Rather, due process is flexible and calls for such procedural protections as the particular situation demands. The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

*Fujimoto v. Au*, 95 Hawai'i 116, 164, 19 P.3d 699, 747 (2001) (quoting *Bank of Hawai'i v. Kunimoto*, 91 Hawai'i 372, 388, 984 P.2d 1198, 1214 (1999) (internal citations omitted)).

■ Specifically, Ostendorp claims that, prior to the October 18, 1999 continued hearing on the Rule 15 sanctions, the circuit court did not inform "[Ostendorp] and his counsel that it was not proceeding under its contempt powers but under its inherent authority and [RCCH Rule 15(b)]. At that point, [Ostendorp's] counsel had already submitted a memorandum opposing sanctions focusing on procedural requirements of contempt." Ostendorp further claims that "[he] and his counsel had no notice of nor an opportunity to prepare a meaningful defense to sanctions under the court's inherent authority and [RCCH Rule 15(b)]." Ostendorp clearly misrepresents the record. At the September 16, 1999 hearing, the circuit court explained that the purpose of the hearing was to ascertain whether Ostendorp should be sanctioned pursuant to RCCH Rule 15 and the court's inherent authority for failing to appear at trial on September 7, 1999, stating:

[Y]ou may argue why, now, the Court, under its inherent authority, as well [as] its authority under the [sic] Rule 15 of the Circuit Court Rules should not impose these sanctions against Mr. Ostendorp for not appearing, which resulted in the jurors being excused ... without the jury trial going forward.

At Ostendorp's request, the September 16, 1999 hearing was continued to October 18, 1999, and the court ordered the parties to submit legal memoranda in support of their positions no later than October 11, 1999. Thus, Ostendorp clearly had an opportunity to submit a memorandum after the circuit court expressly stated that it was proceeding under RCCH Rule 15 and its inherent power. Additionally, on October 11, 1999, Ostendorp did in fact file a memorandum in opposition to the imposition of sanctions. Contrary to Ostendorp's assertions on appeal, his memorandum acknowledged that the circuit court informed him that it was proceeding under RCCH Rule 15 and does not cite any statutes or case law pertaining to contempt. Finally, at the October 18, 1999 hearing, Ostendorp demonstrated his awareness of the nature of the proceedings when he argued that sanctions were inappropriate because Roberts appeared in his place. Accordingly, in the present case, Ostendorp clearly had notice of the proceedings against him and he was given an opportunity to be heard at a meaningful time and in a meaningful manner. We, therefore, hold that the circuit court did not violate Ostendorp's right to due process before sanctioning him.

### C. *Imposition of Sanctions Under RCCH Rule 15(b)*

Ostendorp argues that the circuit court abused its discretion in sanctioning him under RCCH Rule 15(b), which provides:

*Effect of failure to appear.* An attorney who, without just cause, fails to appear when his case is before the court on a call or motion or on pretrial or trial, or unjustifiably fails to prepare for a presentation to the court necessitating a continuance, may be subject to such discipline as the court deems appropriate.

On appeal, Ostendorp maintains that the sanction order should be reversed because he sent a "qualified substitute" in his place and his failure to appear was not without just cause. Both of Ostendorp's arguments lack merit.[8]

### 1. Ostendorp Failed To Appear For Trial

Ostendorp concedes that he was not present for trial on September 7, 1999. Nevertheless, relying on *Nakata v. Nakata,* 7 Haw. App. 636, 793 P.2d 1219 (1990), Ostendorp argues that he did not violate RCCH Rule 15 because a qualified substitute appeared in his place. In *Nakata,* an attorney was ordered to pay the opposing party's attorney's fees and costs for failing to appear at a hearing. The ICA held that "[u]ntil the family court excused his appearance, [counsel] was required to appear in person, or by qualified substitute, at the August 10, 1989 hearing." *Nakata,* 7 Haw.App. at 639, 793 P.2d at 1221. Although the term "qualified substitute" is not defined in *Nakata,* Roberts cannot be said to have been a qualified substitute by any reasonable definition because the evidence supports the circuit court's findings that Roberts was not authorized to represent Adam when he appeared before the circuit court on September 7, 1999 and that he was not prepared to proceed with trial.

### a. *Roberts was not authorized to represent Adam when he appeared before the circuit court*

█ In the present case, Roberts was not counsel of record for Adam, he was not retained by Adam, and he was not a member of the same law firm as Ostendorp, Adam's attorney of record. Ostendorp claims that *he* had retained Roberts and that Adam *later* gave Roberts authority to act as lead counsel. However, at the September 7, 1999 trial date, Adam informed the circuit court that he had not given Roberts authority to represent him at trial and that he did not want to proceed with Roberts as trial counsel. The representations by both Roberts and Adam clearly indicated that Roberts was not authorized to act as defense counsel.

---

8. On appeal, Ostendorp does not challenge the amount of the sanction order.

On appeal, Ostendorp argues that the trial court erred in finding that Roberts was initially not authorized to represent Adam at trial. In support, Ostendorp cites Adam's declaration attached to Ostendorp's October 11, 1999 memorandum in opposition to the imposition of sanctions, the only evidence in the record suggesting that Roberts was authorized to represent Adam. However, "it is well settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." *In re Doe*, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001) (citation omitted). Therefore, given the statements of both Adam and Roberts at the September 7, 1999 trial date, the circuit court did not clearly err in finding that Roberts did not have the authority to represent Adam when he appeared before the court.

### b. *Roberts was not prepared to proceed with trial*

In the present case, Roberts advised the circuit court on September 7, 1999 that Ostendorp had called him three days earlier, requesting that Roberts try Adam's case. Although Roberts opined that he was adequately prepared to handle Adam's defense, the court's further inquiries established that Roberts had not gone over Adam's proposed testimony with him, had not reviewed one of the videotapes he intended to introduce at trial, and failed to bring the photographs he planned to use at trial. Consequently, the circuit court did not clearly err in finding that Roberts was not prepared to proceed with trial. Because Roberts was not authorized to represent Adam and was not prepared for trial, we hold that Ostendorp failed to appear by qualified substitute and that, therefore, the circuit court did not err in finding that Ostendorp failed to appear for trial.

### 2. Ostendorp's Failure To Appear Was Without Just Cause

■ On appeal, Ostendorp argues that his failure to appear at Adam's trial was not without just cause because of a scheduling conflict with a civil trial in federal court.

However, on April 19, 1999, Ostendorp agreed to the September 7, 1999 trial date. On July 31, 1999, when Magistrate Kurren advanced Ostendorp's civil case in federal court to August 31, 1999, Ostendorp failed to inform the magistrate of the potential conflict. The record contains no evidence indicating that Ostendorp attempted to reschedule his federal court date. Additionally, Ostendorp failed to inform the circuit court of any scheduling conflict during the September 2, 1999 telephone conference. Finally, Roberts indicated that Ostendorp's trial in federal court was not in session on the day he was scheduled to appear for Adam's trial. Based upon the record, we hold that the circuit court did not abuse its discretion in concluding that Ostendorp's failure to appear was without just cause.

### D. *Inherent Authority*

Inasmuch as the circuit court properly sanctioned Ostendorp under RDDH Rule 15, we need not address whether the sanction order was also appropriate under the circuit court's inherent authority.

### IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's order of November 30, 1999, imposing sanctions against Ostendorp for failing to appear at Adam's trial without just cause, in violation of RCCH Rule 15.