**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000078**
**07-JUN-2021**
**07:53 AM**
**Dkt. 135 MO**

NOS. CAAP-20-0000078 AND CAAP-20-0000079

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CAAP-20-0000078
STATE OF HAWAI'I, Plaintiff-Appellant, v.
WILLIAM M. GILROY, also known as William of the Family Gilroy,
William Michael Gilroy, Jr., William Michael Gilroy, W.M. Gilroy,
and William Michael Gilroy, Jr., Defendant-Appellee

AND

CAAP-20-0000079
STATE OF HAWAI'I, Plaintiff-Appellee, and PAUL R. MOW,
Real Party-in-Interest-Appellant, v. WILLIAM M. GILROY,
also known as William of the Family Gilroy, William Michael
Gilroy, Jr., William Michael Gilroy, W.M. Gilroy, and
William Michael Gilroy, Jr., Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-18-000893)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

In this consolidated appeal, Plaintiff-Appellant State of Hawai'i (**State**) and Real Party in Interest-Appellant Deputy Attorney General Paul R. Mow (**Mow**) (collectively **Appellants**)[1] appeal from the "Order Dismissing Charges Pursuant to Hawai'i [sic] Revised Statutes § 704-406 and Releasing Defendant From the Custody of the Director of Health" filed on January 30, 2020 and the "Findings of Fact, Conclusions of Law, and Order Imposing Rule 15 [Hawai'i Rules of the Circuit Courts] Sanctions Against

---

[1]  Mow filed a Notice of Appeal on February 18, 2020 in CAAP-20-0000079 as the Real Party in Interest with respect to the order imposing sanctions. This court consolidated the appeals under CAAP-20-0000078.

[Mow]" (**Sanction Order**) filed on May 22, 2019, in the Circuit Court of the Third Circuit (**Circuit Court**).[2]

On appeal, Appellants contend that the Circuit Court: (1) erred by setting and holding a hearing on a motion to stay filed by *pro se* Defendant-Appellee William M. Gilroy (**Gilroy**)[3] while the proceedings were suspended; (2) erred in finding Mow violated Rules of the Circuit Courts of the State of Hawai'i (**RCCSH**) Rule 15(b);[4] (3) abused its discretion by sanctioning Mow $500; (4) violated Mow's due process rights by increasing the sanction from four hours of community service to $500 after Mow exercised his right to a hearing; and (5) erred in making Findings of Fact (**FOFs**) 15, 29, 50, 66, and 67.

For the reasons set forth below, we vacate the Sanction Order and remand for further proceedings.

## I. Background

On November 21, 2018, Gilroy was charged with 29 counts of Unauthorized Practice of Law, in violation of Hawaii Revised Statutes (**HRS**) §§ 605-14, 605-15, 605-17, and 702-204.

On January 17, 2019, Gilroy failed to appear for his arraignment and plea and the Circuit Court entered a bench warrant for his arrest.[5]

During a hearing on March 22, 2019, the State argued there was more than sufficient reason to doubt Gilroy's fitness to proceed and moved the Circuit Court for an examination

---

[2]  The Honorable Melvin H. Fujino presided.

[3]  On August 20, 2020, the appellate clerk filed a notice of default of the answering brief, informing Gilroy that the time for filing his answering brief expired.  Although Gilroy sought relief from default and was given the opportunity to file an answering brief, Gilroy again failed to file a timely answering brief and the appellate clerk filed a second notice of default of the answering brief.

[4]  RCCSH Rule 15(b) provides:

> **(b) Effect of failure to appear.** An attorney who, without just cause, fails to appear when his case is before the court on a call or motion or on pre trial or trial, or unjustifiably fails to prepare for a presentation to the court necessitating a continuance, may be subject to such discipline as the court deems appropriate.

[5]  It appears that although Gilroy was physically present for the arraignment and plea, he refused to state his name for the record.

pursuant to HRS § 704-404 (Supp. 2016) to determine whether Gilroy was fit to proceed.  The Circuit Court granted the State's request for an examination, set a hearing for May 30, 2019, and entered an "Order Suspending Proceedings, for Examination of [Gilroy] Under HRS Chapter 704 and for Transport" (**Order Suspending Proceedings**).

On March 28, 2019, Gilroy filed a "Motion to Stay Execution of '[Order Suspending Proceedings]' Pending Appeal" (**Motion to Stay**), which contained a handwritten notation that a hearing was set for April 18, 2019 at 11:00 a.m.  In this Motion to Stay, Gilroy sought, *inter alia*,[6] to stay the Order Suspending Proceedings and his fitness examination pending an appeal to this court.[7]

On April 2, 2019, Gilroy filed seven documents, six of which were notices of counterclaim for alleged damages.  These six documents did not indicate a hearing date.  The last document Gilroy filed on April 2, 2019 was a "Notice for 'Telephonic Conference Call'" in which Gilroy appears to cite Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 16.1(c)(1)[8] to notify the State of his appearance by telephone and demands the Circuit Court allow him to appear by telephone for the April 18, 2019 hearing.

On April 10, 2019, Gilroy filed three additional documents which indicate a hearing on April 18, 2019 at 11:00 a.m. (**April 10, 2019 documents**).[9]

---

[6]  We recognize that Gilroy's submissions are often difficult to discern and contain a fair amount of extraneous material.

[7]  On March 28, 2019, Gilroy had also filed a notice of appeal from the Order Suspending Proceedings, which created appellate case no. CAAP-19-0000421.  Subsequently, on September 26, 2019, this court dismissed CAAP-19-0000421 for lack of appellate jurisdiction.

[8]  Gilroy mistakenly cites to HRCP Rules although this case involves criminal charges against Gilroy.

[9]  The April 10, 2019 documents are Gilroy's "Affidavit of Notice of Fraud by Public Servants at Court of March 22, 2019 A.D." "Notice of Failure of Competency of Deputy [Attorney General] to Provide Postage for Service of Instruments" and "Counts 1-29 Jury Instructions".

Thus, of the eleven documents filed by Gilroy between March 28, 2019 and April 10, 2019, five appear to indicate a hearing on April 18, 2019.

During the April 18, 2019 hearing, Gilroy appeared in person.  Mow appeared by telephone and stated, "Your Honor, if we're proceeding with the motion today I do believe I need to be present.  My understanding was today was a status.  I was not aware that it was a motion."  The Circuit Court questioned Mow as follows:

> THE COURT:  How would you -- how did you think that this is a motion to stay -- ah, status when --
>     Mr. Gilroy, you filed your motion on March 28, 2019; is that correct?
>
> MR. GILROY:  Yes.  Thank you.
>
> THE COURT:  And then in your motion you have a Notice of Motion on page 24 of 24?
>
> MR. GILROY:  Yes.  Thank you.
>
> MR. MOW:  Two things, Your Honor.  First of all, I believe proceedings are suspended.  Second --
>
> THE COURT:  Wait.  Wait, wait.
>
> MR. MOW:  -- I attempted to call your office --
>
> THE COURT:  Wait.  Hey, wait.
>     So how did you think that you could appear by phone today? What notice or proof -- wait.  What proof do you have that this was a status hearing and not a motion filed by Mr. Gilroy?
>
> MR. MOW:  Your Honor, my recollection of the documents that was filed by Mr. Gilroy -- actually had said somewhere that it was in reference to a status by phone.
>
> THE COURT:  Where is that?  Where is that in the motion?
>
> MR. MOW:  I don't have the doc -- I don't have the document in front of me, Your Honor.  My apologies.  We're in the process of moving.
>
> THE COURT:  Oh, so is that an excuse?
>
> MR. MOW:  That's what I -- that's my recollection. It's not an excuse.
>
> THE COURT:  I know but you calling in for one hearing that you don't even have the document in front of you?
>
> MR. MOW:  No, Your Honor, I do not.  We're in the process of a move and --
>
> THE COURT:  That's not one excuse.  If you calling in for one hearing and you telling me you don't have the document in front of me -- in front of you, and you're making representation that there's a reference to stay.

4

MR. MOW:  Your Honor, what happened was at the time that we received the motion, I looked at the -- at whatever it said. And at that time I made a call to your office just to confirm it.  I also looked with JEFs and I did not see a motion set for hearing on the calendar.  So my understanding was that it was a status.

THE COURT:  Well you're wrong.

Gilroy requested sanctions against Mow for failure to appear and failure to respond to his Motion to Stay.

The Circuit Court continued the hearing on Gilroy's Motion to Stay until May 10, 2019 at 9:00 a.m.  Further, at the April 18, 2019 hearing, the Circuit Court addressed the possibility of sanctions against Mow, stating:

[THE COURT:]  Mr. Mow, we're also going to have a rule -- Circuit Court Rule 15 hearing if you want as to the Court having to continue this matter because, first of all, you didn't appear in person, you didn't get permission from the Court to appear by phone, and you acknowledge that you have receipt of Mr. Gilroy's motion yet you cannot -- you say you don't have the motion in front you.  As an experienced attorney I find that hard to believe that you think that this is a status hearing, yet you cannot point out in the pleadings where this Court said it was a status.  And even if a party said it's a status, unless you get permission from the Court or it's filed as a status, you cannot just assume that it's a status and then decide that you not going fly in from Honolulu, and call in on the day of the hearing.
     So we can have a Rule 15 as to why the Court have to continue this hearing and wasting the Court's time on the calendar today.

MR. MOW:  Well, Your Honor, as I stated before, I did make attempts to call your office –

THE COURT:  I don't care if you made attempts to call the office, it's not one excuse.  Cause we only get one clerk and one bailiff and we were in jury trial, okay.

MR. MOW:  I understand, Your Honor.  You got to understand too that --

THE COURT:  No.  No, you got to understand, if you want a Rule 15 hearing we can set it for the same day.

MR. MOW:  I'm just putting on my position for the record, Your Honor.  The other part is of course --

THE COURT:  It's a yes or no question.

MR. MOW:  -- the hearing set for today, there is no hearing set for today per JEFs.

THE COURT:  Well maybe that's what you want to use for your Rule 15.  So we'll set the Rule 15 hearing.  I'm assuming you want a Rule 15 hearing?

MR. MOW:  I don't wish a Rule 15 hearing, Your Honor.  I'm asking just for the Court's consideration basically.  We've attempted to respond to everything that Mr. Gilroy has filed

in the past.  We have a good record of doing that.  We certainly had no intention of not filing a response to it if we believed that there was a hearing set for today.  If there was, if it was our mistake and our misunderstanding that we didn't show up, I apologize for that of course.  But there's never been an attempt by the State to not appear.

THE COURT:  Page 24 of the motion filed on March 28, 2019, says Notice of Motion and Certificate of Service.  This document was also electronically filed.  So I find it hard to believe that you even read this whole motion; you would have seen that.  And on page 1 of 24, hearing, handwritten April 18, 11 a.m., 2019.
       Right, Mr. Gilroy?

MR. GILROy [sic]:  That's correct.  Thank you.

THE COURT:  So you can either volunteer to do four hours of community service or we can have a Rule 15 hearing.  Up to you.  What you want to do, Mr. Mow?

MR. MOW:  Your Honor, I prefer to just have a continuance.  But, you know, I'm totally expecting to do this motion, as I said, I put on the record my position, Your Honor.

THE COURT:  Okay.  So we'll set the Rule 15 hearing because I don't hear you volunteering to do four hours of community service.  So we'll have the Rule 15 hearing.  I already stated the basis.  And we'll hear that at the same time on 9:00 on May 10th, at 2019 [sic].

(Emphases added).

Subsequently, during the May 10, 2019 hearing, the Circuit Court denied Gilroy's Motion to Stay before proceeding with the RCCSH Rule 15 hearing against Mow.  Mow testified he received emails through the Judiciary Electronic Filing System (**JEFS**) electronic notification when any motions were filed by Gilroy.  Sometime during the week of April 1, 2019, Mow reviewed Gilroy's Motion to Stay but could not remember the precise day.  Mow testified that sometime in the afternoon on April 2, 2019, he saw emails received through the JEFS electronic notification that Gilroy filed additional motions.

Mow then went into JEFS to download and review the motions and saw that Gilroy's Notice for Telephonic Conference Call had a date set for April 18, 2019.  Mow testified he called the Circuit Court to confirm that there "was in fact a hearing that was approved by the Court, and whether because the case was under suspension at that time whether we could do it telephonically."  Mow was unable to reach anyone at the Circuit Court and left a voice mail message stating he received a notice

6

about the April 18 hearing, was confused because the proceedings had been suspended pursuant to the Order Suspending Proceedings, and that he was not expecting further motions pending the completion of the examination.

Mow did not receive a call back and did not make any other attempts to contact the Circuit Court for clarification. Mow also testified that on April 2, there was nothing on the events section of JEFS that a hearing was set for April 18. However, on the day of the hearing, Mow saw that there was a notation on JEFS for the April 18 hearing.

Mow testified he did not intend to delay the proceedings and that if he had received confirmation from the Circuit Court that his presence in Kona was required, he would have flown in from Honolulu.

Mow further testified that in his twenty-two years as an attorney, he had never seen a hearing set while proceedings were suspended. Additionally, because Gilroy did not have an attorney as a *pro se* defendant, Mow was unable to contact an attorney about the filing and was unable to obtain confirmation of the hearing. Mow also stated he had issues trusting the hearing date provided by Gilroy because he was *pro se* and was facing a fitness hearing.

The Circuit Court then questioned Mow's preparation for the hearing as follows:

> Q. Okay. And at the hearing on April 18, 2019, you called on the day of the hearing and on the record when you represented to this Court -- and it's all in the minutes. I going take notice of my own files and records, I'll just give you an opportunity to respond. You at that time said you thought it was a status hearing. And when I asked you, "Where does it say that in the motion," you represented on the April 18th, 2019, hearing that you didn't have the motion with you.
>
> A. That is correct.
>
> Q. So wouldn't that be another reason we had to continue the case, because you didn't even have the motion, even if you thought it was a status hearing, to address it?
>
> A. Yeah, well specifically to that -- and, Your Honor, at the time when you had asked me whether I had the motion in front of me, I could not answer affirmatively to that. The reason is it was in a box, basically. We were moving our offices from 333 Queen Street to 707 Richards. I literally was working in an office that didn't have a desk or a phone. I called this Court on my own cell phone. I literally at

7

that point --

Q.  Well that was a reason -- another reason the Court had
to continue the hearing because you didn't even have your
motion with you.

A.  Again, I didn't believe that it was going forward as a
hearing.  And if that's a mistaken belief --

Q.  Anything else you -- I don't know an attorney working 20
years, call the court on one status -- think it's a status
hearing and don't even have the motion in front of them.  So
when the Court addressed them questions, the response is, "I
don't have my motion with me, I'm moving.  We're in the
process of moving."  Is that -- that's not being prepared.
Period.

A.  Again, in these particular circumstances, if proceedings
are suspended and it doesn't fit the two grounds, I do not
understand how a hearing can proceed.

Q.  But this is an opportunity at a hearing, as you know,
for parties to raise issues.  Whether or not you agree with
them raising the issues, the fact is that the parties have
an opportunity to have the Court address that.  So you're
not the decision-maker in that part as whether or not you
think the hearing should go forward or not.  That's all I
hearing from you.  And even when you call in, all you doing
is saying, "I don't have the motion."

A.  Well again, I did point out that the hearing was -- I
mean, the proceedings are suspended.  I never heard --

Q.  We're not even -- we not even asking you about the
substance of the motions.  We just talking about the
opportunity or vehicle or forum for parties to address
matters before the Court.

A.  Well I'm not going to argue on that point. I can see
your point.

Q.  Well then don't keep bringing it up.  Anything else you
want to tell me?

A.  No.

Mow further clarified that he did not have the motion
in front of him for the April 18 hearing because he normally
would go onto JEFS to access the motion if needed.  However, Mow
experienced connectivity issues and could not access the motion.

The Circuit Court concluded,

[THE COURT:]  Regarding the motion filed by Mr. Gilroy on
March 28, 2019, Mr. Mow admits that he did receive that
motion or his office received the motion on March 28, 2019.
The Court will find under Rule 15 of the Rules of Circuit
Court that his calling in for the hearing, not filing an
opposition, representing that he believed this was a status
hearing, and not having the motion in front of him so that
he could point out to the Court why he thought it was a
status hearing; Court will find was -- which caused the
continuance to today.  And he was -- that he unjustifiable
[sic] failed to prepare for presentation to the Court on

April 18th, 2019.
What would you like to say, if anything, before I sanction you?

MR. MOW:  Your Honor, no, I don't.  I think I've said everything I wanted to say.  Thank you.

THE COURT:  Court impose a $500 fine.
You can -- Counsel, you can prepare the order.
Anything further?

[Mow's counsel]:  Nothing, Your Honor.

## II. Discussion

### A.    The Circuit Court Did Not Err By Having a Hearing on Gilroy's Motion to Stay

Appellants contend that the Circuit Court erred in holding a hearing while the proceedings were suspended.  In support of this contention, Appellants argue that in Mow's twenty-two years as an attorney, he never encountered a situation where the court scheduled a hearing on a motion while the proceedings were stayed pursuant to HRS § 704-404(1).  Appellants assert that given Gilroy's status as a *pro se* defendant and where Gilroy's fitness to proceed was an issue, Mow believed that the hearing could not be held.  Appellants also argue Gilroy's Motion to Stay did not raise issues of bail or issues related to bond under HRS Chapter 804, and thus did not fall within the exceptions provided in HRS § 704-404(1).

Appellants' arguments are apparently based on their interpretation of HRS § 704-404(1) and therefore we review this issue *de novo*.  State v. Castillon, 144 Hawaiʻi 406, 411, 443 P.3d 98, 103 (2019) ("Statutory interpretation is a question of law reviewable de novo.").

The proceedings were suspended pursuant to HRS § 704-404(1) which provides:

Whenever there is reason to doubt the defendant's fitness to proceed, the court may immediately suspend all further proceedings in the prosecution; provided that for any defendant not subject to an order of commitment to a hospital for the purpose of the examination, neither the right to bail nor proceedings pursuant to chapter 804 shall be suspended. If a trial jury has been empanelled, it shall be discharged or retained at the discretion of the court. The discharge of the trial jury shall not be a bar to further prosecution.

(Emphasis added).

Although Appellants argue that the April 18, 2019

hearing could not be scheduled after the proceedings were suspended pursuant to HRS § 704-404(1), "it is well-settled that courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them." Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawaiʻi 452, 457, 903 P.2d 1273, 1278 (1995).  The language in HRS § 704-404(1) does not limit the court's authority to control the litigation process.  Additionally, regardless of the merits or demerits of Gilroy's Motion to Stay or the issues raised regarding Gilroy's fitness to proceed, Appellants assert an incorrect reading of HRS § 704-404(1) in which they contend essentially that the Circuit Court is precluded from holding further hearings related to the Order Staying Proceedings itself, such as a motion for reconsideration or, as in this case, a motion to stay the Order Staying Proceedings.

The Circuit Court did not err by scheduling and holding a hearing on April 18, 2019 related to Gilroy's Motion to Stay.

**B.    The Circuit Court Erred By Proposing a Sanction Without a Hearing, or in the Alternative, to Set an RCCSH Rule 15(b) Hearing**

Appellants argue that Mow did not violate RCCSH Rule 15(b) and that the Circuit Court abused its discretion by imposing a $500 fine on Mow.  The Appellants also challenge the Circuit Court's FOFs 15, 29, 50, 66, and 67, asserting that these findings misstate the evidence.[10]

---

[10]  The challenged FOFs state:

> 15.    At a Status Conference scheduled by the Court and heard on March 22, 2019, Mr. Mow appeared in person. (Exhibit 2 - Doc 113)[.]
>
> . . . .
>
> 29.    The Court asked him again if he wanted to do four hours of community service of if he wanted a Rule 15 hearing.  It was up to him. Mr. Mow replied he's just expecting a continuance.
>
> . . . .

(continued...)

10

We do not reach those issues because we conclude the RCCSH Rule 15(b) hearing before the Circuit Court was tainted by the Circuit Court's initial proposition that Mow "voluntarily" undertake community service for his purported misdeeds, or in the alternative, the court would set an RCCSH Rule 15(b) hearing.

Appellants argue that the Circuit Court violated Mow's due process rights by increasing the sanction from four hours of community service to $500 after Mow invoked his due process right to a hearing.  During the April 18, 2019 hearing, the Circuit Court stated: "So you can either volunteer to do four hours of community service or we can have a Rule 15 hearing.  Up to you. What you want to do, Mr. Mow?"  Appellants argue that what the Circuit Court offered was essentially a sentencing inclination. We reject that analogy to a criminal sentence, but rather conclude the Circuit Court undermined Mow's due process rights by suggesting Mow could accept a sanction without a hearing, or in the alternative, have a hearing on the alleged RCCSH Rule 15(b) violation.

We review questions regarding procedural due process *de novo*, under the right or wrong standard.  State v. Adam, 97 Hawaiʻi 475, 481, 40 P.3d 877, 883 (2002).  Due process requires prior notice and an opportunity to be heard at a meaningful time

---

[10](...continued)

50.   Mr. Mow represented that he thought it was a "status" hearing and he didn't have the Motion to Stay in front of him.  The Court asked Mr. Mow even if he thought the hearing was a "status" hearing, his not having the Motion to Stay in from of him at the April 18, 2019 hearing was another reason to have to continue the hearing?  Mr. Mow replied "yes" (Exhibit 2 - doc 153)[.]

. . . .

66.   Based on Mr. Kory Young's testimony, it appears Mr. Mow received notice of the Demand for Constitutional assistance of Counsel filed on March 4, 2019 at 1:53 PM.

67.   Although Claimant's First Amended Motion to Dismiss filed 12 minutes later on March 4, 2019 at 2:05 PM (set for hearing on March 12, 2019), Mr. Mow testified that he did not have notice of the motion.

and in a meaningful manner for counsel charged with a violation of RCCSH Rule 15.  Id. at 482, 40 P.3d at 884.  In Dubin, this court held:

> With respect to [RCCSH] Rule 15(b), it expressly provides that the attorney's failure to appear must be "without just cause." Due process requires prior notice and a hearing so that an attorney charged with a violation of [RCCSH] Rule 15(b) may prepare and have an opportunity to show that his failure to appear at the appointed time was not "without just cause."

In re Dubin, 9 Haw.App. 249, 261, 833 P.2d 85, 92 (1992). Although the Circuit Court stated Mow would be "volunteering to do four hours of community service[,]" the court's offer of community service was clearly intended to be a sanction without a hearing for Mow's alleged violation of RCCSH Rule 15.

This case is analogous to Felton v. Dillard Univ., No. 03-30926, 2004 WL 2943283 at *1 (5th Cir. Dec. 21, 2004), in which the Fifth Circuit Court of Appeals held that a federal district court had abused its discretion by taking under advisement a motion for sanctions against an attorney, while also directing the attorney to perform 100 hours of community service. Unlike here, the counsel in Felton performed the community service.  Id.  However, the Fifth Circuit held that the district court's method of meting out the sanction was an inherent abuse of judicial discretion.  Id.  The Fifth Circuit Court first noted that community service was a sanction.  Id.  Further, the court explained that, "by ordering [counsel] to devote one hundred hours of her time to community service, while inexplicably denying that any sanction had been imposed, and later dismissing the motion for sanctions precisely because the community service had been completed, the district court did not reasonably exercise its sanction power."  Id.  The Fifth Circuit concluded that the district court erred by making "the question of whether sanctions should be imposed contingent upon whether those very sanctions [i.e. community service] had been completed."  Id.

This case is not exactly like Felton, but similar concerns are at issue.  Here, the Circuit Court undermined Mow's due process rights by proposing that Mow "volunteer" for

12

community service (*i.e.*, agree to a sanction without a hearing) or in the alternative have an RCCSH Rule 15(b) hearing.  Like Felton, if Mow had agreed to the community service proposed by the Circuit Court, no further action would have been taken on the alleged RCCSH Rule 15(b) violation.  The Circuit Court was wrong to make the hearing on sanctions contingent on whether Mow accepted an offer of sanctions without a hearing.  As recognized in Dubin, Mow had a due process right to a hearing.  Once Mow declined the Circuit Court's proposal of community service without a hearing, the subsequent hearing before the Circuit Court on the alleged RCCSH Rule 15(b) violation was tainted, especially where the Circuit Court's sanction of $500 is quite different from the previously proposed community service and where there is no explanation by the Circuit Court for the difference.

### III. Conclusion

For the foregoing reasons, we vacate the Circuit Court's Sanction Order against Mow and remand the case for another RCCSH Rule 15(b) hearing before a different judge.[11]

DATED:  Honolulu, Hawaiʻi, June 7, 2021.

| | |
|---|---|
| On the briefs: | /s/ Lisa M. Ginoza<br>Chief Judge |
| Kevin K. Takata,<br>Paul R. Mow,<br>Deputy Attorneys General,<br>for Plaintiff-Appellant<br>(CAAP-20-0000078)<br>and for Real-Party-in-<br>Interest-Appellant<br>(CAAP-20-0000079) | /s/ Katherine G. Leonard<br>Associate Judge<br><br>/s/ Keith K. Hiraoka<br>Associate Judge |

---

[11]  We note, in any event, that the Honorable Melvin H. Fujino has retired.